# Third District Court of Appeal

## State of Florida

Opinion filed May 3, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1038
Lower Tribunal No. 18-5387
_____

**Mark E. Buechele,**
Appellant,

vs.

**In Re: The Estate of Amparo Berenice Buechele,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Milton Hirsch, Judge.

Mark E. Buechele, in proper person.

Law Office of Jerome Hurtak, and Jerome J. Hurtak, for appellee Helene Buechele.

Before EMAS, MILLER and BOKOR, JJ.

EMAS, J.

**INTRODUCTION**

This appeal arises out of a probate dispute among siblings. Appellant Mark E. Buechele (Mark) appeals from the trial court's order awarding "attorney's fees and appropriate sanctions" against him and sister Lorraine Buechele-Lacal[1] and in favor of sister/appellee Helene Buechele (Helene), for Mark's "vexatious litigation related to his attempt to avoid dismissing with prejudice" a related case in Broward County, as required by the terms of the parties' earlier global settlement agreement. Both parties agree that the trial court relied, as a basis for the sanction, upon its "inherent authority to impose attorney's fees against an attorney for bad faith conduct." Moakley v. Smallwood, 826 So. 2d 221, 226 (Fla. 2002).

Because the trial court failed to comply with Moakley's requirement that the party or attorney who is the subject of the sanctions motion be given "notice and an opportunity to be heard—including the opportunity to present witnesses and other evidence," id. at 227, we reverse and remand for an evidentiary hearing on the issues as framed by Helene's motion for sanctions and by the trial court's order to show cause.

---

[1] Although the Sanctions Order was entered against both Mark and his sister Lorraine, only Mark has appealed that order.

**FACTS AND PROCEDURAL HISTORY**

Mark Buechele and Helene Buechele are two of the six children of Amparo Berenice Buechele (Decedent). During the administration of Decedent's estate, several lawsuits were initiated. In May 2020, the parties entered into a global settlement agreement (GSA) seeking to resolve their pending lawsuits, including a bill of discovery action filed by Mark in Broward County against several banks, seeking to obtain bank records of the Decedent and her predeceased spouse (the Bill of Discovery Case). More specifically, the GSA sought to "terminate" all cases except the "Main Case," referring to the instant probate case. The probate court entered an order approving the terms of the GSA. The following is a timeline of the parties' post-settlement filings and trial court orders, culminating in the order on appeal:

• <u>May 29, 2020</u>: Mark filed a notice of dismissal without prejudice in the Bill of Discovery Case.[2]

• <u>June 1, 2020</u>: Helene filed a motion to enforce settlement and compel Mark to comply with the GSA. She maintained that the GSA required Mark to dismiss the Bill of Discovery Case in its entirety, without any limitations or conditions.

---

[2] It should be noted that Mark, who is a member in good standing of the Florida Bar, represented himself throughout all relevant proceedings in the trial court and on appeal.

• June 15, 2020: Mark filed a response in opposition, contending that the GSA did not apply to the third-party banks in the Bill of Discovery Case.

• June 16, 2020: the trial court granted the motion to enforce the GSA, directing Mark to "file within ten days of the resent order, a notice of dismissal with prejudice of all claims in all the forgoing cases against Helene Buechele and the estate of Amparo Berenice Buechele." The order elaborated: "In plain language: as against Helene and the estate, these lawsuits are over."

• June 25, 2020: Mark filed a notice of voluntary dismissal "with prejudice all claims and causes of action against Helene Buechele and the estate of Amparo Berenice Buechele" in the Bill of Discovery Case. The notice, again, did not dismiss the non-party banks.

• June 26, 2020: Helene filed a motion for order to show cause, contending that the voluntary dismissal did not terminate the Bill of Discovery Case (and thus violated the GSA) because it allowed Mark to refile against the banks to seek the underlying bank records. Helene requested "entry of an order to show cause or in the alternative an order directing Mark (…) to file a Notice of Voluntary Dismissal (with prejudice)," specifying that the dismissal should be "against all Defendants named or unnamed." She further requested that the trial court "reserve jurisdiction to conduct an evidentiary hearing to award" attorney's fees and costs against Mark.

• July 3, 2020: Mark filed a response to the motion to show cause and a declaration in support of his response, maintaining that he complied with the trial court's order as he dismissed the Bill of Discovery Case with prejudice as to Helene and the Estate.

4

• July 7, 2020: the trial court entered a Show Cause Order, stating that the Bill of Discovery Case should have been terminated by operation of the GSA.  The Order provided that Helene's "motion to show cause [] is granted. Counsel for [Helene] is to submit for signature a proposed order to the court granting the alternative relief prayed for in that motion," i.e., "an order directing Mark [] [] to file a notice of Voluntary Dismissal (with prejudice)" against "all Defendants named or unnamed."

• July 13, 2020: the trial court entered a Supplemental Order, consistent with the language proposed in Helene's motion, specifying that the notice of voluntary dismissal with prejudice shall state it is "against all Defendants named or unnamed." The Supplemental Order further "reserve[d] jurisdiction to determine appropriate sanctions to be imposed on Mark Buechele . . . , to determine the amount of attorney's fees and costs to be awarded to Helene Buechele for bringing said Motion and to further enforce the terms of this Order and the [GSA]."

• July 15, 2020: Mark moved for rehearing on the Show Cause Order and Supplemental Order, arguing that the GSA did not require dismissal with prejudice of unrelated third parties.

• July 20, 2020: Mark appealed three orders (the Corrected Order, the Show Cause Order and the Supplemental Order) in case number 3D20-1011. The primary issue in that appeal was whether the trial court properly construed the GSA to require Mark to dismiss the Bill of Discovery Case in its entirety with prejudice.  In August 2021, this court issued a per curiam affirmance of the lower court's order.

• March 22, 2022: Helene filed in the trial court a "motion to determine the amount of attorney's fees and appropriate sanctions to

be awarded against Lorraine Lacal and Mark Buechele." Helene maintained that the Supplemental Order granted an award in her favor of attorney's fees and costs for enforcing the GSA, and reserved jurisdiction to determine the amount of attorney's fees and costs and appropriate sanctions—i.e., that the trial court granted entitlement, and the only issue remaining was the amount.

Helene's motion sought a total of $26,880 for all attorney's fees and sanctions ($21,600 in attorney's fees and $5,280 in personal representative's fees). Invoices were attached to the motion.

• April 12, 2022: Mark and Lorraine filed responses in opposition generally disagreeing with Helene's position and maintaining that her motion sought "an unreasonable, excessive, and unjustified award of fees for Attorney Hurtak and for the imposition of other sanctions, based upon no evidence, no hearings, no findings of fact, which is untimely, and goes way beyond anything claimed to have been reserved in an order entered approximately twenty-one months ago."

• May 4, 2022: Mark filed an objection "to ex parte order submitted on 5/04/22 by attorney Jerome Hurtak on behalf of [Helene]." The objection noted: "There have been no hearings (either evidentiary or non-evidentiary) for more than two years in this case. The last hearing in this case was on January 7, 2020.

• May 11, 2022: the trial court entered the subject order granting Helene's amended motion to determine the amount of attorney's fees and appropriate sanctions to be awarded against Mark and Lorraine (Sanctions Order). The order awarded the requested $21,600 in attorney's fees and $5,280 in personal representative fees against Mark and Lorraine for vexatious litigation.

6

Mark appeals the May 11, 2022 Sanctions Order.[3]

## ANALYSIS AND DISCUSSION

While the Sanctions Order cites no legal basis for the award of fees, the parties agree that the trial court relied upon its inherent authority to impose fees as a sanction pursuant to Moakley, 826 So. 2d at 226. In Moakley, the Florida Supreme Court clarified that "a trial court possesses the inherent authority to impose attorneys' fees against an attorney for bad faith conduct." Id. A trial court exercising this authority, it continued, must strike "an appropriate balance . . . between condemning as unprofessional or unethical litigation tactics undertaken solely for bad faith purposes, while ensuring that attorneys will not be deterred from pursuing lawful claims, issues, or defenses on behalf of their clients or from their obligation as an advocate to zealously assert the clients' interests." Id.

Accordingly, the inherent authority to impose attorney's fees for bad faith conduct "carries with it the obligation of restrained use and due process." Id at 227.

---

[3] We review "a trial court's decision to impose sanctions for bad faith conduct for abuse of discretion." Goldman v. Est. of Goldman, 166 So. 3d 927, 929 (Fla. 3d DCA 2015). However, to the extent that the claim involves an issue of law, we review the trial court's action de novo. Wells v. Halmac Dev., Inc., 189 So. 3d 1015, 1019 (Fla. 3d DCA 2016).

7

The Moakley Court established several requirements which must be followed by a trial court in exercising its inherent authority to impose fees as a sanction for bad faith conduct:

1. The attorney's fees sanction "must be based upon an express finding of bad faith conduct." Id.

2. The attorney's fees "must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees. Thus, a finding of bad faith conduct must be predicated on a high degree of specificity in the factual findings." Id.

3. "[T]he amount of the award of attorneys' fees must be directly related to the attorneys' fees and costs that the opposing party has incurred as a result of the specific bad faith conduct of the attorney." Id.

4. "[S]uch a sanction is appropriate only after notice and an opportunity to be heard—including the opportunity to present witnesses and other evidence." Id.

See also Goldman v. Est. of Goldman, 166 So. 3d 927, 930 (Fla. 3d DCA 2015) (holding the trial court could not impose sanctions without making an express finding of bad faith and detailed factual findings describing specific bad faith acts).

As a preliminary matter, we reject Helene's contention that the prior appeal "conclusively established" that Mark engaged in vexatious litigation and that the trial court made sufficient findings of fact to support the award of sanctions, i.e., that Mark engaged in bad faith conduct warranting the imposition of attorney's fees. This position is without merit, most obviously because none of the three prior orders (the Corrected Order, Show Cause Order, or Supplemental Order) made a specific finding of bad faith conduct or vexatious litigation.

A determination of whether Mark engaged in bad faith conduct was not before this court in the prior appeal. Instead, the primary issue in the first appeal was the interpretation of the GSA. Indeed, in the prior appeal Helene consistently maintained that the only relief obtained through the trial court's three prior orders was enforcement of the GSA by a complete and unconditional dismissal of the Bill of Discovery Case.

Even if we were to accept Helene's premise that the trial court, in its prior orders (the Corrected Order, Show Cause Order, or Supplemental Order), determined that Mark engaged in bad faith conduct sufficient to warrant an award of attorney's fees under <u>Moakley</u>, these orders on their face failed to satisfy <u>Moakley</u>'s requirements, e.g., express findings of bad faith conduct supported by detailed factual findings and linking such conduct

9

to the attorney's fees incurred. Helene also concedes—as she must—that attorney's fees were not at issue (or even ripe for review) during the first appeal. See Niehaus v. Dixon, 237 So. 3d 478, 481-482 (Fla. 5th DCA 2018) ("An award of attorneys' fees does not become final, and, therefore, appealable until the amount is set by the trial court") (quotation omitted).

We thus move on to the question of whether the order on appeal (the Sanctions Order) satisfies the requirements of Moakley. The order provides in pertinent part:

> THAT sanctions are hereby assessed against MARK BUECHELE and LORRAINE LACAL for vexatious litigation related to their attempt to avoid dismissing with prejudice the Discovery Case filed in Broward County, Florida. Beginning on May 29, 2020, MARK and LORRAINE attempted to evade compliance with the parties Global Settlement Agreement by filing a dismissal without prejudice and deselection HELENE BUECHELE's Counsel for service of the dismissal without prejudice; filing a series of dismissals with limiting language intended to preserve their ability to pursue litigation against HELENE; failing to comply with this Court's CORRECTED ORDER ON MOTIONS TO ENFORCE SETTLEMENT AGREEMENT dated June 16, 2020, requiring them to dismiss all claims in the Discovery Case with prejudice. As a result of MARK and LORRAINE's vexatious litigation from May 29, 2020, to June 25, 2020, administration and distribution of the Estate was delayed and the Estate and HELENE incurred additional costs and fees. From May 29, 2020, to June 25, 2020, HELENE incurred additional fees from her Counsel Jerome Hurtak Esq. in the amount of $9,850.00. During that same time period, the Estate incurred fees from Personal Representative, Stephen Fuller Esq., in the amount of $3,840.00 for matters related directly to MARK and LORRAINE's breach of the GSA and $1,440.00 in PR fees for increased administrative expenses

10

caused by MARK and LORRAINE's obstruction of administration [of the Estate].

The Sanctions Order ostensibly identifies the conduct (e.g., "vexatious litigation" in an "attempt[] to evade compliance with the parties Global Settlement Agreement by filing a dismissal without prejudice and deselection" and "filing a series of dismissals with limiting language intended to preserve their ability to pursue litigation against HELENE; failing to comply with this Court's CORRECTED ORDER") and how such conduct caused unnecessary delay and resulted in other parties incurring additional costs and attorney's fees ("the administration and distribution of the Estate was delayed and the Estate and HELENE incurred additional costs and fees"). Compare with Hicks v. Hicks, 284 So. 3d 576, 579 (Fla. 4th DCA 2019) (finding order insufficient on its face where it listed the underlying conduct— e.g., failure to comply with court orders to file report, failure to appear at hearing, and reported discrepancies between income in accounts and income reported to IRS—but did not make "the requisite express finding of 'bad faith' conduct" or show "how any bad faith conduct by the guardian directly caused the sister to incur $3,500 in attorney's fees").

However, it is undisputed that the trial court made these findings and imposed attorney's fees as a sanction without first holding an evidentiary

11

hearing and affording Mark an "opportunity to present witnesses and other evidence." Moakley, 826 So. 2d at 227.

And as discussed earlier, it is clear that Mark preserved this issue by raising it in his response to the motion for fees and in his objection to the ex parte proposed order. Significantly, Helene does not contend on appeal that Mark waived his right to an evidentiary hearing on either issue—entitlement based on bad faith or reasonableness of the amount of fees sought. Soto v. Carrollwood Vill. Phase III Homeowners Ass'n, Inc., 326 So. 3d 1181, 1185 (Fla. 2d DCA 2021) ("Without a stipulation or waiver, the trial court was required to take evidence before making a fee award") (citing Newman v. Newman, 121 So. 3d 661, 662 (Fla. 1st DCA 2013) (recognizing that "absent a stipulation, a party seeking attorney's fees must prove with evidence at an evidentiary hearing the reasonableness of the fee sought").

Pursuant to Moakley, a hearing was necessary to afford Mark the opportunity not only to present witnesses and other evidence on the question of the amount and the reasonableness of the attorney's fees to be awarded, but on the threshold question of whether Mark acted in bad faith. Whether such a position is ultimately found meritorious is beside the point. The point is that, given the safeguards established by the Florida Supreme Court in Moakley to ensure due process in such proceedings, and Mark's

contemporaneous objection to the lack of an evidentiary hearing, the trial court was required to provide Mark the opportunity to present witnesses and evidence at an evidentiary hearing before issuing its sanctions order. See Wanda I. Rufin, P.A. v. Borga, 294 So. 3d 916, 918 (Fla. 4th DCA 2020) ("Because the trial court imposed the attorney's fees sanction without notice and opportunity to be heard, we reverse and remand.")[4]

Additionally, with regard to the amount of attorney's fees awarded, the trial court "failed to take testimony and make findings as to the reasonable hours and hourly rate of [Appellee's] counsel." Hicks, 284 So. 3d at 579 ("In awarding attorney's fees, a trial court must set forth specific findings, predicated on expert testimony, as to the hourly rate and number of hours reasonably expended") (citing Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1151-52 (Fla. 1985); Marcellus v. Peterson, 330 So. 3d 573, 575 (Fla. 4th DCA 2021) (fees awarded under Moakley; affirming entitlement but reversing for an evidentiary hearing where, "[t]he order did not contain any findings concerning a reasonable hourly rate and a reasonable number of

---

[4] It does not matter, for purposes of Moakley, that Mark acted pro se in filing the underlying notices of dismissal in the Bill of Discovery Case. Goldman, 166 So. 3d at 930 ("Although Moakley involved the imposition of fees against an attorney, the procedures described in the case are equally applicable to the assessment of fees against a party.") (quoting T/F Systems, Inc. v. Malt, 814 So. 2d 511, 513 (Fla. 4th DCA 2002)).

13

hours."); Rakusin v. Christiansen & Jacknin, P.A., 863 So. 2d 442, 445 (Fla. 4th DCA 2003) ("An award of attorney's fees as a sanction must contain express findings regarding the number of hours reasonably expended and a reasonable hourly rate for the type of litigation involved"). Here, Helene submitted invoices with her motion and the trial court awarded the exact amount requested without a hearing. This was error. Soto, 326 So. 3d at 1185 ("Without a stipulation or waiver, the trial court was required to take evidence before making a fee award") (citing Newman, 121 So. 3d at 662 (recognizing that "absent a stipulation, a party seeking attorney's fees must prove with evidence at an evidentiary hearing the reasonableness of the fee sought").

## CONCLUSION

Because the trial court failed to comply with Moakley's requirement that the party or attorney who is the subject of the sanctions motion be given "notice and an opportunity to be heard—including the opportunity to present witnesses and other evidence," Moakley, 826 So. 2d at 227, we reverse the Sanctions Order and remand for an evidentiary hearing on all relevant issues framed by Helene's motion for sanctions and by the trial court's Order to Show Cause, including: whether the attorney/party engaged in bad faith conduct; if so, the specific acts of bad faith conduct that resulted in the

14

unnecessary incurrence of attorney's fees and costs; and a determination of reasonableness as to the fees and costs incurred as a result of the specific bad faith conduct.

Reversed and remanded with directions.